# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SALLY F. BOMMER,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-656-Orl-19DAB**

**COMMISSIONER OF SOCIAL SECURITY ,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on Plaintiff's petition to review the decision of the Commissioner, denying Plaintiff's application for disability benefits. For the following reasons, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for additional consideration.

### *PROCEDURAL HISTORY*

Plaintiff filed an application for disability insurance benefits on October 28, 2002, asserting an onset date of August 22, 2002 (R. 47-49). The claim was denied at the initial and reconsideration levels, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 37, 41, 153-171). The ALJ issued an unfavorable decision on September 28, 2004 (R. 19-26). Plaintiff requested review of the hearing decision by the Appeals Council (R. 7), but the request was denied (R. 4-6). The ALJ's decision thus stands as the final decision of the Commissioner. This action timely followed.

The parties have briefed the issues and consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter is now ripe for review.

### **NATURE OF CLAIMED DISABILITY**

Plaintiff claims to be disabled due to limitations resulting from "ruptured discs and a back injury" (R. 61); namely, neck pain, back pain and migraine headaches (R. 156).

### *Summary of Evidence before the ALJ*

At the time of the hearing, Plaintiff was forty-eight years old, with a high school equivalency diploma (GED), and past work experience as a courier for a delivery service (R. 156; 62).

The medical evidence in the record indicates that on August 26, 2002, Plaintiff presented to Dr. Ming Lai's office, complaining of back pain resulting from lifting over 200 pounds at work (R. 99). An x-ray revealed no acute findings (R. 93). Plaintiff was diagnosed with back sprain, anti-inflammatories and muscle relaxants were prescribed, and Plaintiff was restricted to no bending and no lifting over 10 pounds (R. 99). On return visit on August 29, 2002, Plaintiff reported no improvement in her back pain, and physical therapy was prescribed (R. 98). Lifting was limited to nothing over 20 pounds. *Id.* On return visit on September 12, 2002, Plaintiff said she was 40% better, but continued to complain of lower back pain, which increased upon sitting or standing (R. 97). On physical examination, straight leg test was positive at 40 degrees for the right leg, and negative for the left leg. There was tenderness over the sciatic notch and right SI joint. Plan was to continue physical therapy and conservative treatment, and Plaintiff was returned to light duty with no lifting, bending, or twisting. *Id.*

A week later, Plaintiff complained that the physical therapy was not helping and actually hurting (R. 96). On examination, Plaintiff was "exquisitely tender" over the SI joint and along the

L5-S1 areas, with marked increase in pain on any hip range of motion. *Id.* Assessment was lower back pain, and it was noted that she had no improvement on conservative therapies. *Id.* An MRI was ordered. This test was performed on September 27, 2002, revealing a L5-S1 small to moderate sized protrusion of the disc abutting the left S1 nerve and thecal sac (R. 94). An annular tear was noted at this level. On October 3, 2002, Dr. Lai's nurse practitioner reviewed the MRI, assessed Plaintiff with LBP and HNP L5-S1, restricted her to no lifting, no bending, twisting, pushing or pulling, and referred her to a spine specialist (R. 95).

Plaintiff presented to Dr. Hani Kommos on October 10, 2002, complaining of back and right leg pain (R. 102). Physical examination revealed "fairly limited flexibility" in her back (R. 103). She could heel and toe walk, and straight leg raises were negative. She did have some loss of sensation on the thigh to about her knee, but no weakness and reflexes were present. *Id.* Impression was mild lumbosacral degenerative disc disease and back sprain. Epidural injections were ordered "since the physical therapy and medication is not working." *Id.* Plaintiff was placed in off work status.

On November 7, 2002, Plaintiff returned to Dr. Kommos with no improvement (R. 100). It was noted that she did not have any significant radiculopathy. Epidural injection was recommended as was physical therapy, and she was released to light duty, where she was to avoid bending, stooping and lifting.

On January 6, 2003, and March 30, 2003, two non-examining state agency physicians examined the records and determined that Plaintiff had the residual functional capacity for light work (R. 104-111; 112-119).

On August 14, 2003, Plaintiff presented to neurologist Gary Weiss, M.D., for evaluation of "constant" headaches and neck and back pain (R. 89-93). Plaintiff noted that she was being followed

by "Dr. Packey" (R. 89).[1] Plaintiff also noted that she was seen at the hospital on July 30, 2003, for increased neck and low back pain, and that Dr. Packey had ordered MRI's of the cervical and lumbar spine, which were performed a week prior to the visit (R. 89).[2] Upon examination, gait and station were normal, including tandem, toe and heel walking, and strength was normal and symmetric in all four extremities (R. 90). Reflexes were normal and sensation was intact, but Plaintiff's cervical spine motions and lumbar spine motions were decreased, with muscle spasms bilaterally and tenderness present. Dr. Weiss also noted thoracic paraspinal muscle spasms and tenderness, and straight leg raising was positive bilaterally at 85 degrees (R. 91). Assessment was neck pain (rule out herniated nucleus pulposus); migraine headaches, aggravated by the neck pain; herniated nucleus pulposus L5-S1 with radicular symptoms; and thoracic spine pain (rule out HNP). *Id.* Lortab was prescribed.

On return visit on August 18, 2003, Plaintiff reported that her headaches were a little better, but occurring daily, with associated dizziness, nausea/vomiting and photophobia/phonophobia (R. 87). Her neck pain was described as "constant with decreased range of motion" and her low back pain included pain radiating to bilateral buttocks, hips and right leg; increasing with prolonged sitting. *Id.* Plaintiff brought the August 6, 2003 MRI scans with her to the visit, which revealed HNP L5-S1 and HNP C5-6, with bulging at C4-5 and C6-7 (R. 87). Dr. Weiss recommended VAX-D,[3] followed by physical therapy with cervical traction, continued medications and recommended that Plaintiff have an MRI of the thoracic spine (R. 88).

---

[1] The administrative record includes no evidence from Dr. Packey, although Plaintiff did list the doctor as a treating physician in her statement (R. 85) and referred to him in her testimony at the hearing (R. 158).

[2] These records, too, are missing from the administrative record, despite Plaintiff's testimony that she was hospitalized twice in 2003 (R. 157).

[3] Vertebral Axial Decompression is a non-surgical procedure, involving a series of treatments, similar to traction. See http://www.bchealthguide.org/kbase/topic/detail/other/tn9278/detail.htm.

Plaintiff returned to Dr. Weiss on August 29, 2003 (R. 143-44) and/or September 29, 2003 (R. 142).[4] Plaintiff reported that she was experiencing severe headaches, two to three times a week, that last all day (R. 142). Neck pain was constant and radiated to the shoulders and arms, with decreased range of motion noted. Thoracic spine pain "comes and goes" and low back pain was described as constant and radiating to the right hip and down the leg, with numbness and tingling. Right leg had some weakness. It was noted that Plaintiff did not have the thoracic spine MRI completed, "due to financial reasons - insurance ended." *Id.* Examination was unchanged from prior examination, as was the impression. Dr. Weiss directed Plaintiff to continue the medications, "try to return to school at night" and noted that Plaintiff was "T.T.D. for at least 12 months."[5]

On September 29, 2003, Dr. Weiss completed a Residual Functional Capacity Questionnaire (R.120-125). In this form, Dr. Weiss indicated that Plaintiff suffered from herniated discs at C5-6 and L5-S1, a thoracic injury and migraine headaches; impairments that could be expected to last for at least twelve months. According to Dr. Weiss, Plaintiff's impairments were consistent with the functional limitations described, and he felt that the pain experienced by Plaintiff was severe enough to frequently interfere with her attention and concentration. Dr. Weiss indicated that the medications Plaintiff takes have the side effect of drowsiness. Dr. Weiss opined that Plaintiff was not a malingerer, and that she could sit for fifteen minutes at a time, stand for ten minutes at a time, but could not sit or stand for more than two hours in an eight hour day. Dr. Weiss indicated that Plaintiff could occasionally lift less than ten pounds and rarely even lift ten pounds. It was also Dr. Weiss' opinion that Plaintiff would likely be absent from work for more than four days per month.

---

[4] It is not clear from the papers if this was two visits, or one visit with a typographical error on the records.

[5] T.T.D. is presumed to mean temporarily totally disabled.

On January 7, 2004, Plaintiff returned to the office of Dr. Weiss, complaining of severe pain, following bending over (R. 138). Plaintiff noted that the pain was so severe that she went to the emergency room at the hospital, and they gave her two shots.[6] Examination and impression were unchanged, and plan included obtaining the hospital records, and a prescription for Lortab and Medrol (R. 139). On return visit on March 23, 2004, Plaintiff stated that the longest she has gone without a headache was 10 days (R. 133). Neurological examination was normal, save for decreased cervical spine motion, with spasm and tenderness; thoracic paraspinal muscle spasms and tenderness; and decreased lumbar spine motion, with spasms and tenderness. Straight leg raise was positive at 85 degrees (R. 134). Dr. Weiss recommended a lumbosacral MRI and VAX-D therapy, but noted "Patient is financially unable at the present."(R. 135).

Plaintiff presented to Dr. Chee Lee on July 20, 2004, in order to establish as a new patient (R. 150). On physical examination, Plaintiff's neck motion was limited, and tenderness was noted. On neurological examination, motor strength was diminished in the lower extremities due to pain, strength was 2-3/5 bilaterally in lower extremities. Straight leg raising was positive at 30 degrees, and strength of upper extremities was not intact. Deep tendon reflexes were within normal limits (R. 151). Impression was degenerative disc disease, insomnia secondary to pain and chronic pain. Dr. Lee indicated that Plaintiff was "in so much pain that even giving her narcotics," which he thought "would

make her functional, she cannot go without a heating pad and it is quite concerning at this point." (R. 152). Dr. Lee "encouraged her to apply for Disability" and felt that Plaintiff should see another

---

[6]The hospital records are not included in the administrative record, although Plaintiff testified as to this visit at her hearing (R. 157).

neurosurgeon and repeat the MRI but noted that "financial concerns" might prohibit that (R. 151-52). Plan included a return visit scheduled for four weeks hence.

Dr. Lee completed a Residual Functional Capacity Questionnaire on July 21, 2004, which mirrored the limitations found by Dr. Weiss (R. 145-49). Dr. Lee indicated that Plaintiff could sit for fifteen minutes at a time and stand for ten minutes at a time; could stand or walk for less than two hours a day and sit for about two hours of an eight hour day; and could rarely lift less than ten pounds. He indicated that Plaintiff was not a malingerer, and that these limitations would last at least twelve months. Dr. Lee also noted that psychological limitations as a result of Plaintiff's chronic pain would affect her ability to work (R. 148).

Plaintiff appeared and testified at her August 12, 2004 hearing regarding her pain and limitations (R. 153). She noted her migraines, stiff neck and upper and lower back pain, and that the migraines are so severe that she went twice to the hospital in the past year (R. 157). She stated that her migraines sometimes happen two times a week, but sometimes for as long as three days straight. *Id.* Her neck pain was constant, as was her back pain (R. 157-59). She testified that she was able to dress herself, sometimes can make breakfast, and walks with her daughter one block to school (R. 161). She does laundry with help over the course of the day and drives a car. She stated that she relaxes watching television or reading, with a heating pad on (R. 162). She stated that she tried to work as an office worker in Dr. Lee's medical office from end of May 2004, until the end of June 2004, but that it was too painful, and she ended up being a patient of the doctor instead (R. 163-65). She stated that she could stand in one spot for five minutes, sit for ten minutes and walk for ten minutes (R. 165). No vocational expert testified.

The ALJ determined that Plaintiff had lumbar degenerative disc disease but found that she had the residual functional capacity to perform sedentary work, without any non-exertional limitations compromising her ability. The ALJ found that Plaintiff's claims of limitation were not credible and the ALJ discredited the opinions of both treating physicians. Applying the Medical Vocational Guidelines ("the grids"), the ALJ found Plaintiff to be not disabled (R. 19-26).

**The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**Issues and Analysis**

Plaintiff contends that the ALJ erred in determining that Plaintiff has the residual functional capacity to perform a full range of sedentary work in that: 1) the opinions of her treating physicians were improperly discredited and no other evidence supports the RFC; 2) the ALJ failed to utilize vocational expert testimony; 3) Plaintiff's pain was improperly evaluated; 4) as was Plaintiff's credibility. The Court finds merit in Plaintiff's contentions.

*Treating physicians*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also*

*Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff's treating neurologist and Dr. Lee both opined that Plaintiff was not capable of even sedentary work. The ALJ discounted these opinions in their entirety, as follows:

> The undersigned accords these opinions little weight as there is no basis for such severe restrictions. Further, Dr. Lee's medical record shows he only examined the claimant once and the report does not support his assessment. Accordingly, the undersigned finds thee claimant retains the following residual functional capacity to perform sedentary work, that is she can lift/carry up to 10 pounds and can perform prolonged sitting. (R. 23).

The finding that "there is no basis for such severe restrictions" is not supported by substantial evidence. As noted above, the ALJ must give controlling weight to the opinion of a treating physician, unless the opinion is unsupported by objective evidence or is wholly conclusory. Here, Dr. Weiss' opinion is neither. As detailed in his treatment notes, the opinion is based on objective findings such as the MRI's showing herniated discs, and clinical findings and observations, such as positive straight leg raises, spasms and notable tenderness, and decreased range of motion. Dr. Weiss also noted and treated Plaintiff for her frequent and debilitating migraines, an impairment not even

-10-

noted as "severe" by the ALJ, despite uncontradicted evidence.[7] *See Ortega v. Chater,* 933 F. Supp. 1071 (S.D. Fla. 1996) (error to disregard opinion of disabling migraine headaches when medical record reveals signs and symptoms, such as nausea, vomiting, photophobia, and dizzy spells).

In her brief, the Commissioner argues that the opinion was properly discounted because it was inconsistent with the opinion of Dr. Kommos, who opined that Plaintiff could return to light duty work. The Court is unconvinced. Initially, as quoted, the ALJ did not discredit the opinion because it was inconsistent with the earlier opinion of Kommos, but rather because the ALJ found no basis for the restrictions. Moreover, the ALJ *did not adopt or credit* Dr. Kommos' opinion that Plaintiff could perform light duty work; the ALJ found Plaintiff was only capable of sedentary work. Indeed, the ALJ specifically discounted Dr. Lai's opinion that Plaintiff could perform light duty work, "as it does not take into consideration the claimant's back pain." (R. 23).

Moreover, the fact that Dr. Lee only examined Plaintiff once is not, in and of itself, a reason to completely discredit the opinion. Indeed, ALJ's regularly credit the opinions of one-time consultative examiners. Rather, as set forth above, the length of treatment is but one factor to consider in evaluating the weight given to a treating physician's opinion. To the extent the ALJ found that Dr. Lee's report does not support his assessment, this finding, which is non-specific and conclusory, is not supported by substantial evidence.[8] While there may be reason to discount Dr.

---

[7] Indeed, the ALJ's failure to note and evaluate this impairment as severe is itself reason to remand. Plaintiff's testimony and the treatment notes are replete with reference to her intense migraine pain. Although Plaintiff did note that the medicine prescribed for her "works if taken early on" (R. 133), this does not negate the impairment, in view of the uncontradicted evidence of the side effects of the medicine, including drowsiness, and the fact that the medicine is not always effective, as shown by the fact that Plaintiff presented to the hospital twice in 2004, for severe migraine pain.

[8] Dr. Lee found decreased motor strength in the upper and lower extremities, decreased range of neck motion, positive straight leg raising at 30 degrees bilaterally and "a lot" of muscle tenderness in the neck and back. (R. 151).

Lee's opinion, the ALJ did not properly articulate any, and grounds are not apparent from the record. This mandates reversal.

*Pain, vocational experts, and credibility*

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to

preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ discredited Plaintiff's assertions of pain and limitations, finding that they were inconsistent with her activities; noting that she did not need a device for ambulation; and that she had not undergone back surgery and none had been recommended (R. 22).  The ALJ found that Plaintiff had the residual functional capacity for a full range of sedentary work, and that capacity "has not been compromised by any non-exertional limitations." (R. 26).  This finding is not supported by substantial evidence.

Here, Plaintiff suffered from an objectively determined impairment of herniated discs and migraine headaches.  These impairments are such that they can reasonably be associated with resulting pain.  Indeed, the ALJ acknowledged this in rejecting Dr. Lai's opinion that Plaintiff could not perform light duty work because "it [did] not take into consideration [Plaintiff's] back pain." (R. 23).  As pain is a non-exertional impairment, and the ALJ acknowledged, as he must, that Plaintiff suffers from significant pain, exclusive reliance on the grids was error.

It appears that the record could be reconciled to interpret the ALJ's decision as a finding that Plaintiff does, indeed, suffer pain, but just not disabling pain.  While such a conclusion is within the ALJ's prerogative if supported by a clearly articulated rationale and substantial evidence,[9] once the ALJ makes a finding of significant pain, it must be evaluated with respect to its effect upon the residual functional capacity, as set forth above.  Such an evaluation is absent here.  Indeed, the ALJ presented nothing to undermine the uncontradicted evidence as to Plaintiff's debilitating migraine pain – clearly an impairment that is non-exertional in nature, and one that can be expected to erode her capacity for work.  In view of Plaintiff's constant complaints of severe pain, the uncontradicted

---

[9] While unnecessary to the analysis in view of the other matters discussed herein, the Court points out that the lack of an assistive device is irrelevant to migraine pain and the record is clear that Plaintiff could not afford the various therapies presented her, much less surgery.

-14-

opinions of her physicians that she was not a malingerer, the medications prescribed, and the objective clinical and laboratory results and evidence, there is simply nothing to support the ALJ's implicit finding that Plaintiff's pain had no vocational impact. Indeed, Plaintiff testified that she tried to work in a sedentary office worker position, but that she was unable to do so for more than two months because it was "very stressful, very painful" and "my back went out on me, my neck, the headaches came back" and she could not show up for work on a steady basis due to the pain (R. 164). The testimony of a vocational expert should have been obtained.

While not mentioned by Plaintiff as a ground for reversal, the Court also notes that the record is not complete in that it does not include the treatment notes of Dr. Packey, nor the hospital records from the two visits in 2004. Upon remand, the Commissioner should make every effort to obtain these records. The ALJ should also consider whether Plaintiff's migraines constitute a severe impairment, and reevaluate the Plaintiff's residual functional capacity, consistent with this Opinion.

### *CONCLUSION*

The decision was not made in accordance with proper legal standards and is not supported by substantial evidence. It is therefore **reversed** and the matter is **remanded** to the Commissioner for further development, evaluation and analysis of the record, consistent with this Opinion. The Clerk is directed to enter judgment accordingly, terminate all pending motions and close this case.

**DONE** and **ORDERED** in Orlando, Florida on July 3, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record